## Commonwealth, Appellant, *v.* Seventeen and One-half Barrels and Seventy-two Tanks of Beer.

*Liquor law—Beer—Manufacture and possession—Evidence—Burden of proof—Act of March 27, 1923, P. L. 34.*

In a proceeding to condemn a large quantity of beer, containing an alcoholic content in excess of one-half of one per cent, the evidence established that part of the beer was found in barrels on premises leased from claimant and the remaining part in tanks in claimant's adjacent brewery. Claimant's answer denied it owned or possessed the barrels of beer, but admitted ownership of the beer in the tanks, and averred that it was a lawful beverage in the course of manufacture, and not yet in condition to be marketed, and therefore within the proviso of Section 3 of the Act of March 27, 1923, P. L. 34, permitting a larger alcoholic content while in the course of manufacture. The Commonwealth produced evidence tending to show that the beer from the tanks was being conveyed to the adjoining premises by means of a long hose through a tunnel, and that it was there being placed in barrels and prepared for sale by claimant's employees.

In such case, the burden of showing that the beer was lawfully acquired, used and possessed, was shifted to the claimant by the Commonwealth's evidence. Claimant having failed to meet this burden by its proofs, an order of condemnation was entered.

Argued October 21, 1927. Appeal No. 53, October T., 1927, by the Commonwealth from decree of Q. S., Philadelphia County, June T., 1926, No. 273, in the case of Commonwealth of Pennsylvania v. Seventeen One-half Barrels of Beer, Etc., in the possession of Henry Miller, John Walsh, Charles Schmidmeister, John Zimmerman, George Manns, Bergner and Engel Brewing Company. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Petition for condemnation and forfeiture of intoxicating liquor.  Before SMITH, J.

The facts are stated in the opinion of the Superior Court.

Order made directing return of liquor to the claimant.  The Commonwealth appealed.

*Error assigned* was the order of the court.

*Joseph K. Willing,* Assistant District Attorney, and with him *Charles Edwin Fox,* District Attorney, for appellant.

*William A. Carr,* and with him *Sidney L. Krauss,* for appellee.

OPINION BY CUNNINGHAM, J., March 2, 1928:

The proceeding in the court below was in rem by the Commonwealth for the forfeiture and condemnation, under sub-section (D) of section 11 of the Snyder Act of March 27, 1923, P. L. 34, of seventeen ' half barrels and seventy-two tanks of beer, seized under a search warrant by police officers of the City of Philadelphia on June 3, 1926.  The seventeen half barrels were seized in a portion of a dismantled brewery, located at the southwest corner of 31st and Master Streets, occupied at that time by J. Bloom and Sons under a lease (dated about six months prior to the seizure) from the Bergner and Engel Brewing Company and used by the Blooms as a place of business for the purchase and sale of bottles and bags. These half barrels contained beer having an alcoholic content exceeding one-half of one per cent.  No answer was filed to the Commonwealth's petition for forfeiture and condemnation of these seventeen half barrels of beer and an order of condemnation was accordingly entered by the court below as to them.  At the same

time the officers seized seventy-two tanks or vats of beer (containing some 22,000 barrels) in the adjacent brewery of the Bergner and Engel Brewing Company at the southeast corner of 32nd and Master Streets. The Commonwealth presented to the Court of Quarter Sessions of Philadelphia County its petition for the forfeiture and condemnation of the liquor and its containers. In this petition it was averred that the liquor and property "were unlawfully held and possessed [on the premises situated at the southeast corner of 32nd and Master Streets in the City of Philadelphia] in that no permit (as permit is defined by the National Prohibition Act) had been issued ...... for the possession of the said liquor and/or property on the said premises"; that "the said liquor and/or property was intended to be unlawfully used and was used by the possessor thereof in violation of the provisions of section 3 and section 11 of the aforesaid act, that is to say, the said property was intended to be used and was used for the manufacture of liquor intended to be sold, bartered and disposed of in violation of the provisions of the said act and the said sections"; and that the owner of the liquor and property was unknown to the district attorney.

On July 13, 1926, the Bergner and Engel Brewing Company filed its petition to intervene and for dismissal of the Commonwealth's petition, which petition of the brewing company is, in effect, an answer to the Commonwealth's petition and a claim of lawful ownership of and right of possession to the liquor contained in the seventy-two vats. It is admitted in the answer of the brewing company that it is the owner of the brewery in which the tanks were seized and of the tanks but it is denied that it either owned or possessed the seventeen half barrels of beer recited in the petition or that they were on its premises. In reply to the averment in the petition that the property and liquor

were unlawfully held and possessed in that no permit
had been issued for their possession, the language of
the answer is "it denies sub-section (a) of said para-
graph—that the said liquor and property were unlaw-
fully held and possessed thereon in that no permit
(as 'permit' is defined by the National Prohibition
Act) had been issued." There is no positive averment
in the answer that claimant had a permit. It is ad-
mitted that the property in which the tanks and con-
tents were located had been used and possessed as a
brewery and it is averred that "in August of 1925
said brewery property, in a proceeding brought before
the Court of Common Pleas No. 1 of the City and
County of Philadelphia, was padlocked, and since that
time has not been operated as a brewery; and that at
the time said padlock proceedings and injunction is-
sued therein, the contents of the said tanks mentioned in
the petition were a beverage in the course of manufac-
ture and not a beverage in a condition to be marketed,
nor was the said beverage intended to be marketed at
the time of said proceedings." It is also denied "that
said property was intended to be used at the time of
its alleged seizure for the manufacture of liquor, in-
tended to be sold, bartered and disposed of in viola-
tion of the provisions of said Act." Under the pro-
visions of paragraph IV of sub-section (D) of section
11 of the act the proceeding was at issue under these
pleadings and the burden of proof resting upon the
respective parties at the ensuing hearing is defined
therein. The charge of the Commonwealth, in brief,
was that the liquor was intoxicating and possessed
within this Commonwealth for beverage purposes in
violation of the third section of the act and by section
four it is provided "that proof of the possession of
such intoxicating liquor shall be prima facie evidence
that the same was acquired, possessed and used in
violation of this act." By paragraph V of sub-section
(D) of section 11 it is enacted that "At the time of

said hearing, if the Commonwealth shall produce evidence that the property in question was unlawfully possessed or used, the burden shall be upon the claimant to show; (a) that he is the owner of said property; (b) that he lawfully acquired the same; [and] (c) that it was lawfully used and possessed by him.''

The reply of the claimant, in the language of the brief of its counsel, was that the liquor seized ''was a beverage in the course of manufacture, and not a beverage in condition to be marketed, nor was it intended to be marketed at the time of the proceedings,'' and, being in the course of manufacture, an alcoholic content in excess of one-half of one per cent. was permissible.   The proviso to section 3 of the act says ''that nothing in this act shall prohibit the alcoholic contents of malt or brewed liquors from exceeding one-half of one per cent. during the process of manufacture only thereof.''   As a result of the hearing the learned judge of the Court of Quarter Sessions before whom it was held dismissed the Commonwealth's petition for condemnation with respect to the seventy-two vats of beer seized on the premises of claimant but, as stated, granted a decree of condemnation as to the seventeen half barrels of beer seized on the premises of J. Bloom and Sons. From that portion of the order which refused condemnation of the vats and contents we have this appeal by the Commonwealth.

At the hearing the Commonwealth showed that a chemical analysis of samples taken from the vats disclosed that fifty-six of them contained beer, the alcoholic content of which exceeded one-half of one per cent. by volume,—practically four per cent.—and the remaining sixteen contained beer with an alcoholic content less than one-half of one per cent. The Commonwealth also showed the seizure of the vats and their contents in the brewery of claimant, which was not then in operation, and the arrest of three of its employes in the office; also the seizure of the seventeen

half barrels of beer in the Bloom plant and the arrest of two employes of claimant, who were operating a racking-machine on the second floor of the Bloom plant and racking beer into several of the seventeen half barrels, and who, after their arrest, went to the claimant's brewery to change their clothing. It also showed that claimant's brewery and the Bloom plant were connected by a tunnel which had been in existence for  . many years and that a hose connected with the racking-machine on the second floor of the Bloom plant led down to the first floor, through a door into this tunnel and through the tunnel to the engine-room of claimant's brewery, a distance of some one hundred and twenty feet; that upon the arrival of the officers at the end of the hose it was found to be then disconnected and not within some three hundred feet of any filled tanks in claimant's brewery. We are of opinion that the evidence of the Commonwealth, aided by the presumption to which we have referred, made out a prima facie case against fifty-six of the seventy-two tanks of beer and that the burden was on claimant to show that it was lawfully in possession of them.

The brewing company attempted to show that when seized the contents were in ''process of manufacture'' within the meaning of the above quoted exception in the third section of the act. Its contention was that in the fall of 1925 its brewery had been ''padlocked,'' under the injunction proceedings provided for by the seventh section, by decree of the Court of Common Pleas No. 1 of Philadelphia County; that under the terms of the decree permission had been granted to refrigerate the plant for the preservation of the contents of the vats, which would have to be de-alcoholized, filtered, carbonated and racked before they could be marketed. The Common Pleas proceedings were not offered in evidence and we find no competent evidence in this record with respect to them. It is contended in behalf of the Commonwealth that the ''pro-

cess of manufacture'' referred to in the exemption means a lawful one and that the only way in which malt or brewed liquors may legally be manufactured and possessed in this State is under Federal permits authorizing their manufacture with an alcoholic content exceeding one-half of one per cent. during manufacture, and their de-alcoholization for sale.

In the view we take of the real issue in this proceeding we do not regard the question whether claimant had a Federal permit as of controlling importance: Hazle Drug Co., Inc. v. Wilner, 284 Pa. 361; Commonwealth v. Symington, 89 Pa. Superior Ct. 60. The proceeding is under the state law; the charge is unlawful possession; and the real question under that law is whether the liquor seized was intended to be used in violation of the state law as charged by the Commonwealth, or whether, as asserted by the claimant, it was merely a product in course of manufacture into a cereal beverage which, when the process was completed, would have a lawful alcoholic content. If the claimant has established its contention by the measure of proof required the mere fact that at certain stages of the process of manufacture the alcoholic content was in excess of one-half of one per cent. is immaterial. The intent with which the seized product was possessed must be determined from a consideration of all the competent and relevant evidence.

The evidence discloses certain arresting facts from which, in the opinion of a majority of the members of this court, the conclusion should be drawn that, at the time of the seizure, beer, with an alcoholic content of approximately four per cent., was being conveyed by means of a hose from the vats in the Bergner and Engel Brewery through the tunnel to the Bloom plant and to the racking-machine on the second floor and there placed in half barrels for marketing. There were no beer vats in the Bloom plant and no beer could be made in that plant; the only beer found there was

in the racking-machine and in the seventeen half barrels filled from that machine, which is an appliance operated by air and used to force beer into kegs and bottles. At the time of the seizure two of the seventeen half barrels seized were under the racking-machine and connected with it by pipes and the hose was also connected with the machine. Several of the samples analyzed were obtained from the machine and the half barrels connected with it. Gustavus Bergner, president of the company, testifying for claimant, admitted that the two men arrested while operating the racking-machine were employes of the brewing company, but he could give no explanation of their presence in the Bloom plant. Neither of these employes was produced at the hearing. No explanation of these significant facts was given or even suggested by any witness for the brewing company. Its president's inability to give any explanation is illustrated by his answers to these questions of the court: "The Court: Suppose these officers told you a story of this racking-machine in Bloom's place, with these half barrels under it, and apparently the racking-machine had been used a short time before, and there was beer in the racking-machine, what would you think? Here is what I want to know, in all fairness. I want to know how that beer got in the racking-machine. Mr. Bergner: I am much interested in that myself. The Court: Wouldn't that trouble you if you were sitting here? Mr. Bergner: Yes; and I tried to find out."

The evidence shows that there were at least two men who knew where the beer they were placing in the half barrels came from; they were Mr. Bergner's employees; proper inquiries directed to them would have given him the information he professes to have been seeking. The conclusion seems to be inevitable that at the time of the seizure the beer in claimant's brewery, having an illegal alcoholic content, was being conveyed into the Bloom plant and there prepared for sale. We

cannot agree with the court below that the claimant met the burden imposed upon it.

The order in so far as it applies to the fifty-six vats shown to contain beer with an illegal alcoholic content is reversed; the petition of the Commonwealth is reinstated as to these vats and the record is remitted with directions that a decree of forfeiture and condemnation be entered as to them.